**Ralph T. CLARKE**

v.

**MAINE UNEMPLOYMENT INSURANCE COMMISSION, et al.**

Supreme Judicial Court of Maine.

Argued March 7, 1985.

Decided April 23, 1985.

Ralph T. Clarke, pro se (orally).

Pamela W. Waite, (orally), Leanne Robbin, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Claimant Ralph T. Clarke of Hinckley appeals the order of the Superior Court (Kennebec County) denying his appeal of the decision of the Maine Unemployment Insurance Commission that disqualified him from unemployment benefits because he refused to accept an "offer of suitable work" within the meaning of 26 M.R.S.A. § 1193(3) (Supp.1984–1985). We find no merit in claimant's argument that the Commission erred in finding as a fact that the job offered him was suitable, and we affirm the judgment of the Superior Court.

In the spring of 1982, Ralph Clarke applied for employment with the Ken-a-Set Association for the Retarded, Inc. On May 3, 1982, Ken-a-Set hired him as a "work supervisor," at its Dill Center in Skowhegan. Clarke's job involved providing supervision and care to the mentally retarded adults who participate in Ken-a-Set's work programs. After Clarke had been employed for almost six months as a work supervisor, the position of facility director of the Dill Center became vacant. In an October 24, 1982, letter to Ken-a-Set's executive director, Fred Rovillard, Clarke applied for that position and offered to serve as acting facility director for 30 days at his work supervisor's salary. Clarke wrote that if he was not hired as the permanent director he would "terminate [his] employment with the agency or return to a direct care position, whichever may be acceptable to both [parties] at that time." Ken-a-Set accepted Clarke's offer, and he began work as acting facility director at the Dill Center on November 1, 1982, continuing to receive pay of about $164 per week.

On December 1, Clarke asked Rovillard about Ken-a-Set's progress in hiring a new facility director. Rovillard informed Clarke that no decision had yet been made, but that Clarke was still in the running for the position. In addition, the executive director and Clarke agreed that effective November 29, 1982, Clarke would be paid the facility director's salary of roughly $260 per week. On December 8, 1982, Rovillard

informed Clarke that he would not be selected as the permanent facility director, and gave claimant the choice of staying on as acting facility director until a new director was hired or of immediately returning to his former position. Clarke elected to continue as acting facility director. In a letter dated February 4, 1983, Rovillard notified Clarke that the acting director job would end on February 22, 1983, when the new facility director would begin work. Rovillard wrote: "I wish to stress the fact that you are welcome to return to your previous position." Indeed, Ken-a-Set held the job open for Clarke for several weeks after February 22.

Clarke filed for unemployment benefits on March 28. On the claim form Clarke listed "lack of work" as the reason for his unemployment. The deputy denied Clarke's request for benefits, based on his failure to "accept an offer of suitable work," and Clarke appealed to the Appeal Tribunal which, after a full hearing, affirmed the deputy's decision. Clarke then appealed to the Maine Employment Security Commission, now known as the Maine Unemployment Insurance Commission. The Commission held another full hearing and in an extensive opinion affirmed the decision of the Appeal Tribunal. Clarke filed a timely complaint in the Superior Court, and that court affirmed the Commission's decision. Clarke's multi-staged appeal has now brought him to the Law Court.

■ Maine's unemployment compensation law provides that "[a]n individual shall be disqualified for benefits ... [f]or the duration of his unemployment subsequent to his having refused to accept an offer of suitable work for which he is reasonably fitted...." 26 M.R.S.A. § 1193(3). The agency's factual determination, whether a particular job offer is suitable, is guided by its consideration of statutorily prescribed factors:

In determining whether or not any work is suitable for an individual during the first 12 consecutive weeks of unemployment, the deputy shall consider the degree of risk involved to [claimant's] health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

*Id.*, § 1193(3)(A). The Commission [1] must consider all the elements as outlined by the statute; no single factor is dispositive. *Tobin v. Maine Employment Security Commission*, 420 A.2d 222, 225 (Me.1980); *Grace v. Maine Employment Security Commission*, 398 A.2d 1233, 1235 (Me. 1979).

■ "The question of the suitability of the work offered in a given case is one of fact and the [Commission's] determination of that fact ... cannot be attacked ... if it is sustained by competent evidence." *Lowell v. Maine Employment Security Commission*, 159 Me. 177, 183–84, 190 A.2d 271, 274 (1963) (quoting *Hallahan v. Riley*, 94 N.H. 48, 45 A.2d 886 (1946)). *See also Bean v. Maine Unemployment Insurance Commission*, 485 A.2d 630, 632–33 (Me. 1984); *Boucher v. Maine Employment Security Commission*, 464 A.2d 171, 174 (Me. 1983). The scope of judicial review of the administrative agency's factfinding of suitability is strictly limited; such a finding may be overturned only upon a showing by a challenger that it was "unsupported by substantial evidence on the whole record." 5 M.R.S.A. § 11007(4)(C)(5) (1979). "This standard of review [of an administrative finding of fact] is identical to the 'clear error' standard used by the Law Court to review factual findings by a trial court." *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1207–08 (Me.1982); *see also* Field, McKusick & Wroth, *Maine*

---

1. Although phrased in terms of the factors to be considered by the deputy, the section 1193(3)(A) considerations must also be taken into account by the Appeal Tribunal and the Commission on appeal from the deputy's decision.

*Civil Practice* § 52.7 (Supp.1981). We have also said with direct pertinence here:

> The reviewing court must examine the entire record "to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did." *In re Maine Clean Fuels, Inc.*, Me., 310 A.2d 736, 741 (1973). The fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the agency's findings from being sustained if there is substantial evidence to support them. *Id.* This court will not substitute its judgment for [the Commission's] where there may be a reasonable difference of opinion.

*Seven Islands Land Co. v. Maine Land Use Regulation Commission*, 450 A.2d 475, 479 (Me.1982).

■ In the case at bar, the Commission committed no error in applying the controlling law. The Commission held a hearing on Clarke's claim and produced an opinion stating its reasons for denying benefits to claimant. The Commission, after examining the factors outlined in 26 M.R.S.A. § 1193(3)(A) and the other evidence introduced by Clarke, found as a fact that on February 22, 1983, the position as a work supervisor offered to Clarke was suitable employment for him.[2] Clarke did not argue before the Commission that the work supervisor post was unsuitable because of the risk to his "safety and morals," or because of any problem related to his "physical fitness" or the "distance of the available work from his residence." There was no evidence that Clarke had ever expressed any dissatisfaction with the work supervisor's job during the six months he

held it, and his employer found his performance entirely satisfactory. Clarke did assert that return to the job of "work supervisor" would be detrimental to his health, but the Commission found as a fact that his health problems were attributable solely to his anxiety arising from the competition for the job of facility director. Clarke has not pressed this point on appeal.

Thus, the factual issue for the Commission came down to whether on February 22, 1983, the work supervisor's position was suitable given Clarke's prior training, experience, and earnings. Claimant argued that his bachelor's degree, received in 1964, his master's degree in zoology, received in 1966, and his experience as a substance abuse counselor and as a teacher,[3] together with his experience and salary as acting director, made the offer of a work supervisor's job unsuitable.

■ Plainly, the Commission had adequate evidence on which to base its decision that Ken-a-Set's proposal on February 22, 1983, that Clarke take the work supervisor position was an offer of suitable employment given Clarke's prior training and experience. That was the very job that he had held without complaint for six months prior to November of 1982. Clarke's initial acceptance in May 1982 of the work supervisor post did not mean that that job would be "suitable employment" for him forever. If an individual acquires additional skills and experience over a period of time, a position that he held in earlier years may well cease to be "suitable employment." However, merely because claimant worked as an administrator for a few months after he served as a work supervisor does not automatically prevent the previous staff position from being "suitable" at a later

---

**2.** It is clear that 26 M.R.S.A. § 1193(3)(A) requires an analysis of suitability *as of the time* the job offer is made. That law differentiates between offers made during the first 12 weeks of unemployment and those made thereafter. *See also* Note, *Boucher v. Maine Employment Security Commission: The Role of Acceptance in Employment Security Law,* 36 Me.L.Rev. 439, 446 (1984).

**3.** In fact, Clarke spent only 15 months of his working life as a full-time substance abuse counselor, and his only teaching jobs were limited to three one-year positions in the 1960's. The vast majority of his work experience from 1966 to the present has been as a "self-employed operator of restaurant business, auto restoration business, and property rental."

date. *Cf. Davis v. Commonwealth Unemployment Compensation Board of Review,* 71 Pa.Commw. 585, 455 A.2d 747 (1983) (claimant's working for six months as a relatively highly paid dock worker did not make unsuitable a lower paid position in a laundry, a job he had held for nine years before working on the docks). As the Commission found, the fact that Clarke had sought out the position as a work supervisor, and had held that job for six months immediately before he moved into the acting director's position, is highly relevant evidence in determining that that post remained suitable the following February when he completed his brief tenure in the administrative position. We agree with that analysis. *Cf. Ennis v. Commonwealth Unemployment Compensation Board of Review,* 50 Pa.Commw. 10, 411 A.2d 1291 (1980) (in a voluntary quit case, initial acceptance removes any doubt about initial suitability of a job). In the instant case, Clarke's immediately prior experience has even a greater impact in determining the suitability of the work supervisor's post on February 22, 1983, because Clarke knew that the facility director job was likely to be only a temporary post, and because when applying for the job he stated that, if he was not selected director, he might be willing to return to his staff position.

In reviewing Clarke's prior earnings, we note that he began receiving the director's salary at the end of November 1983, and that that salary was an increase from his work supervisor pay. However, Ken-a-Set paid claimant the increased compensation for only nine days before informing him that he would not be selected as permanent director. Clarke had no reasonable long-term expectation of receiving the facility director's pay, so his brief period of earning a higher level of pay did not make the offer of his former post unsuitable.

■ Accordingly, the Commission had before it evidence fully adequate to support its finding that on February 22, 1983, the "work supervisor" job was a suitable one for Clarke under the criteria of 26 M.R.S.A. § 1193(3)(A). Any member of this court sitting at the Commission hearing might have come to a different conclusion on the fact question of suitability of the work supervisor's job on February 22, 1983. But that is not the question before us on appeal. The sole question for the appellate court is whether the record contains competent evidence to support the Commission's finding of fact. Plainly it does. The Commission's factual determination of suitability under 26 M.R.S.A. § 1193(3)(A) is not clearly erroneous.

In addition to the statutory indicia of suitability, the Commission considered and rejected two other arguments raised by claimant. Clarke asserted that because of disciplinary action he had taken as acting director he would be unable to return to a peer relationship with the other work supervisors. On this point the Commission found that "[t]he claimant produced no evidence to show that the reprimand he issued to one staff person would render any further work as 'work supervisor' intolerable. It is more likely that his short experience as acting director would enhance his standing and ability to perform his duties as 'work supervisor'." We have no reason to disturb this factual finding.

Claimant also asserted that he accepted the work supervisor job only as an entry level position, believing that his chances for promotion within Ken-a-Set were good; but that his unsuccessful application for the facility director's job proved his expectation to be unwarranted. Thus, he argues, after February 22, 1983, the position of work supervisor became unacceptable. Although the Commission made no explicit finding on this point, our review of the transcript of the Commission hearing shows there was no objective evidence to support claimant's expectations, and indeed, the executive director of Ken-a-Set testified that rising through the ranks of that agency was the exception rather than the rule. Clarke's erroneous belief and disappointed expectations did not make the work supervisor position unsuitable.

The record before the Commission contains substantial evidence supporting its finding of fact that on February 22, 1983, Ralph Clarke refused an offer of suitable work. On review we will not disturb that finding, and accordingly, the entry is:

Judgment affirmed.

All concurring.