STATE OF MAINE
KENNEBEC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP 00-78
DHM - KEN - 8/10/2001

NATURAL RESOURCES COUNCIL
OF MAINE, *et al.*,

       Petitioners

    v.

**ORDER ON REVIEW**

LAND USE REGULATION
COMMISSION, *et al.*,

       Respondents

This matter comes before the court on Natural Resources Council of Maine's (NRCM) 80C appeal from the Land Use Regulation Commission's (LURC) approval of a permit application submitted by the Bureau of Parks and Lands to construct an access road and hand-boat launch in the vicinity of John's Bridge on the Allagash Wilderness Waterway. [1]

The Bureau of Parks and Lands ("BPL") proposed to build a facility to offer hand-carry canoe access to the Waterway along with off-road parking for up to 10 vehicles. BPL offered to LURC ("Commission") that the facility would be screened from view from both the Waterway and the road and that there would be no disturbance or construction at the shoreline. The proposed entrance for the facility is a gravel road that would follow the course of a pre-existing road to a small parking area located entirely outside of the "Restricted Zone."[2] From the parking lot, a one-way access road will lead to a small unloading and handicapped parking area 150 feet from the water.

_____

[1] Both parties did an exceptional job briefing the facts and legal arguments. This was much appreciated by a weary law clerk!

[2] The restricted zone is a statutorily protected area of 500 feet on both sides of the Allagash. This land was acquired and is managed by the State. 12 M.R.S.A. § 1873(3).

The road will continue to loop back to the main road. A footpath of about 150 feet will proceed to the water. The Maine DOT has determined that the facility's entrance and exit comply with its guidelines for safe sight distances and design.

The proffered purpose of the facility is to eliminate public use of John's Bridge and other sites along the main road. BPL takes the position that public use of these sites is visually obtrusive, dangerous, and rules prohibiting their use have proven impossible to enforce.

The Commission held public hearings on the proposal in Bangor and Presque Isle. After deliberating on the decision, the Commission voted 4-2 to approve the John's Bridge application.[3] The Natural Resources Council of Maine appeals that agency decision.

NRCM first argues that the Commission did not consider the State and federal statutes governing the Allagash. Specifically, the petitioners refer to the Allagash Wilderness Waterway statute, 12 M.R.S.A. §§ 1871-1890, and the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271-1287 (WSRA). It claims that the remedy for such an error is to remand the case back to the agency, regardless apparently of what the court thinks of the substantive argument. For this proposition it relies on *Christian Fellowship and Renewal Center v. Limington*, 2001 ME 16, 769 A.2d 834. It argues that as a substantive matter, the project does not comply with the Allagash Wilderness Waterway statute because that Act binds the State to "preserve, protect, and develop the maximum wilderness character of the watercourse." 12 M.R.S.A. § 1873(3). NRCM concludes that

---

3 The Commission had initially voted to reject the application but reversed itself. This appears to have been due to the BPL's own rules which did not allow for a project such as one proposed at John's Bridge. The BPL, exercising its rulemaking authority, changed the rule to allow the project.

"it is difficult to imagine how building a road, a parking lot, and a boat launch are consistent with developing the 'maximum' wilderness character of the Allagash." Brief at p. 9. The petitioner further points out that state law prohibits the building of new structures within the restricted zone unless it is "essential to state service agencies." 12 M.R.S.A. §1876(1). It avers that no such finding was made by LURC.

The petitioner also finds it difficult to understand how the proposed development is consistent with the federal designation as a wild river under the Wild and Scenic Rivers Act. It argues that wild rivers are primitive and undeveloped and generally inaccessible except by trail. 16 U.S.C. § 1273(b)(1). It also argues that John's Bridge was not one of the grandfathered access points under the federal designation.

Next the petitioners take the position that the Commission misapplied its statutes and regulations. NRCM argues that the Commission erred by retroactively applying new BPL rules that authorized the development near John's Bridge. It asserts that at the time the application was filed by the BPL its own rules prohibited the development at that site. Then, the BPL amended its rules to permit the development near John's Bridge. The Commission in turn gave effect to this amendment. NRCM claims that this violates the principle enunciated by 1 M.R.S.A. § 302 that "actions pending at the time of passage, amendment or repeal of an Act or ordinance are not affected thereby." *See Riley v. Bath Iron Works Corp.* 639 A.2d 626, 627 (Me. 1994).

NRCM also maintains that the Commission's action within the 60-day limit for approving or denying the application was a vote to deny the application because the BPL failed to satisfy two of the requirements necessary for approval of the application. 12 M.R.S.A. § 685-B(3-A)(D). Although the Commission later reversed itself, and

3

approved the application, the approval should not be considered because it was untimely.

The petitioners also complain that the Commission misapplied the burden of proof. Title 12, Section 685-B(4) establishes that the BPL had the burden of proof to obtain the permit. NRCM avers that this burden was skewed by the Commission's express deference to the BPL. It relies on a passage in the agency's decision that stated the Commission's decision-making process is informed by the BPL's plans and rules.

Next, the petitioners argue that the Commission did not address the pertinent congestion and safety issues as is required by 12 M.R.S.A. § 685-B(4)(B). Particularly, it maintains the Commission did not address the safety issues created by constructing a parking lot and creating access on a risky haul road curve in a dangerous blind spot. The Commission also failed to address safety issues created by the dangerous ice conditions in the winter and spring. The petitioners also argue that the Commission misapplied the requirement that there be no reasonable alternative to the proposed access site. For support it points out that the Commission concluded that the project "will provide a publicly useful alternative to the existing facility at Churchill Dam, which is 13 road miles and 5.5 water miles distant." A.R. 15. It argues that the standard is not whether there is a publicly useful alternative but whether there is no reasonable alternative.

The NRCM also avers that the Commission applied the improper standard to determine that the proposal would not have an undue adverse impact on traditional uses. The Commission could not approve the application unless the BPL demonstrated there would not be "undue adverse effect." 12 M.R.S.A. § 685-B(4)(C). Moreover, under the Commission's rules, the BPL must demonstrate that the "proposal will not

4

have an undue adverse impact on traditional uses." A.R. 18, 797. NCRM takes the position that traditional use did not include day trippers or access at John's Bridge. It is the petitioners' position that day tripper use is fundamentally incompatible with the traditional uses on the Allagash.

Finally, the NRCM claims the Commission failed to consider the specific governing standards under its Comprehensive Land Use Plan. It argues that the Commission did not consider whether the project complied with requirements under the Plan including whether there is separation of incompatible uses, protection of features in areas of natural significance, and protection of scenic character and natural values by fitting proposed land use activities harmoniously into the natural environment.

The petitioners finally assert that the decision was not supported by substantial evidence. The main argument here is that because of what the petitioners perceive to be numerous unintelligible portions of the administrative record, the case must be remanded.

To these arguments, the Commission responds. As for the Allagash Statute, LURC questions whether the Commission, or this court, has legal oversight concerning what is essentially BPL's management mandate under the statute. It argues that LURC was only required to apply its statutory provisions and regulations but has no authority to examine whether the BPL has complied with its obligations under the Act. LURC furthermore argues that the petitioners participated in a preheating conference where it was determined and agreed that LURC would only apply its statutes and regulations. Alternatively, LURC argues that the petitioners have interpreted the LURC statutory

5

permitting criteria much too broadly.[4] LURC argues that it is required to consider an applicant's capacity to comply with State environmental laws but does not take on the job of reviewing all other potentially applicable laws. Addressing the merits of the petitioners' arguments, LURC takes the position that first, the argument is directed toward the BPL and, second, that the BPL is authorized to make rules to develop a management plan for the Waterway, and has done precisely that with respect to the John's Bridge project. The respondent also explains that the language of section 1873, which calls for the maximization of the wilderness character of the watercourse does not compel the prohibition of this type of project. Simply, the mandate is not violated by the John's Bridge project.

As to the Wild and Scenic Rivers Act, LURC reiterates its argument that the Commission has no authority to ensure the applicant has complied with this statute. On its merits however, LURC takes the position that Congress intended the Act to apply only when a federal permit or authorization is required. Alternatively, LURC argues that the statute only imposes the obligation to manage "in such a manner as to protect and enhance the values which caused it to be [designated] without, insofar as is consistent therewith, limiting other uses that do not substantially interfere with public use and enjoyment of these values." 16 U.S.C. §1281(a). As applied to the facts of this case, LURC argues that this language would not preclude a modest, hand-carry, boat lunch with a small parking lot and foot path. Moreover the principal agency involved

---

4 12 M.R.S.A. § 685-B(4)(A) requires that the applicant has made adequate technical and financial provision to comply with the State's air and water pollution control and other environmental laws.

under the WSRA is the National Park Service which only advised that the project ought to be accessible to handicapped people.

LURC argues that it did not retroactively apply the BPL's new rule allowing the John's Bridge project. It argues that the Commission acted on the permit only after the BPL had adopted the proposed rule change.

The respondent further argues that the 60-day time period which the Commission had to act on the permit application does not divest it of jurisdiction to act unless the Legislature specifically stated such an intention. *D&J Associates v. Bd. of Environmental Protection*, 560 A.2d 4 (Me. 1989). It explains that BPL would have been the only party whose interests would have been compromised by the Commission taking extra time to consider the matter, and BPL expressed no objection.

Next, the respondents argue that the Commission properly applied the burden of proof. It points out that the Commission adequately explained that it understood that the applicant had the burden of satisfying all the requirements.

Finally, LURC argues that the hearing transcript is legally sufficient. First, it takes the position that Rule 80C(f) provides that if a party believes the record is deficient, that party shall serve notice on the agency within ten days after the record is filed. Petitioners failed to avail themselves of this provision. Also, the mistakes in the record are minor and none of them prejudice the petitioners from making all of its arguments on appeal.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). In reviewing the decisions of an administrative agency,

7

the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence which supports the result reached by the agency. *CWCO, Inc v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261. *See also Clarke v. Maine Unemployment Ins. Comm'n*, 491 A.2d 549, 552 (Me. 1985) (stating that the "reviewing court must examine the entire record to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did").

First, the argument that the Commission has no authority to ensure all applicants comply with laws it does not itself administer is persuasive. The Allagash Waterway statute is administered by the BPL, not LURC. Moreover, the statutory permitting criteria, found at 12 M.R.S.A. § 685-B(4)(A), requires LURC to find that the applicant has made "adequate technical and financial provision to comply with the state's air and water pollution control and other environmental laws." *Id*. The petitioners emphasize the "and other environmental laws" component of this provision. They assert that this confers upon LURC the weighty obligation to ascertain the meaning and applicability of myriad state and federal environmental and land use statutes. The plain meaning of the permitting criteria requires LURC to ensure that the applicant has the capacity to comply with *State* environmental laws. LURC has satisfied this Legislative directive.

8

The petitioners' argument that this project will degrade the values of the Allagash are equally unpersuasive. First, whether this is a justiciable argument is dubious. Assuming, without deciding, that it is, the statutory purpose of the restricted zone is "to preserve, protect and develop the maximum wilderness character of the watercourse." 12 M.R.S.A. § 1873(3). The petitioners aver that this project will hardly maximize the wilderness character of the watercourse. However, a reasonable examination of the statutory scheme governing the Waterway reveals that part of its purpose is devoted to management. Management is decidedly not a broad prohibition on all development or recreational activity. An assiduous application of the statutory scheme, as petitioners understand it, would make LURC's job exponentially easier by simply requiring that it reject an application for any use within the restricted zone. The real purpose of the statutory scheme is to preserve the wilderness character of the Waterway, part of which involves the enhancement of compatible activities such as canoeing, fishing, and camping. 5 M.R.S.A. 1871

The argument that LURC is not authorized to oversee an applicant's compliance with laws it does not itself administer is even more persuasive in the context of the Federal Wild and Scenic Rivers Act. Nowhere does the Act confer on LURC, or any other similarly situated state administrative agency, the obligation to ensure that all applicants for a state permit also abide by the federal law. Moreover, the State statutory permitting criteria only requires that LURC ensure that the successful applicant has the capacity to comply with State environmental laws. 12 M.R.S.A. § 685-B(4)(A).

There is very little factual support to assist the argument that the Commission retroactively applied a BPL rule which allowed it to approve the permit application.

9

There is also very little factual support to assist LURC's argument that it acted on the permit only after the rule was formally adopted by the BPL. However, it is the petitioner's burden to show that there was a retroactive application by reference to the administrative proceeding or by additional facts by leave of the court. The petitioner has not helped the court examine this argument by reference to any portion of the record and as such, the argument must fail.

The petitioners also argue that the 60-day time limit in which the Commission must issue a decision requires a de facto finding that the permit application was denied. This court does not agree. "Generally those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute, are not commonly considered mandatory. Likewise, if the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized." *Andersen v. Comm'r of the Department of Human Services*, 489 A.2d 1094, 1097 (Me. 1985). The 60-day time limit is hardly the essence of the thing to be done. The purpose of the time limit is merely to curb bureaucratic delay. The purpose of the statute has been substantially complied with and no substantial rights of the petitioners have been jeopardized.

The argument that the Commission misapplied the burden of proof is not correct. The very passage the petitioners use to support their argument simultaneously undermines it. It is clear that the Commission understood its independent role as the permit issuing authority and that all applicants, including the BPL had to satisfy a

10

plethora of statutory and regulatory criteria. That the Commission acknowledged the uniqueness of this particular applicant, a state agency charged with oversight of the Waterway, and the deference that ought to be afforded to its expertise in that particular area, are as obvious as they are legally harmless.

The record also supports the argument that the Commission considered congestion and safety issues presented by spring and winter ice problems. The Commission determined that the entrance and exit have adequate line of sight along John's Bridge Road and they were found by the MDOT to meet its safety standards.

There is also ample record evidence that the Commission determined that the John's Bridge project would not adversely impact the existing uses and natural resources. The argument by the petitioners that the Commission misapplied the standard is semantical. [5]

Finally, the administrative record to the extent that it contains mistakes or unintelligible passages, is sufficiently complete for meaningful judicial review.

The entry will be:

Appeal on review DENIED; final agency action AFFIRMED.

Dated: August 10, 2001

Donald H. Marden,
Justice, Superior Court

---

[5] Whether this, or any other court, should conclude on these facts that such a project is in the long-term best interest of the resource is irrelevant. The question is whether the agency's decision is unreasonable, unjust or unlawful.

Date Filed __11/30/00__ ___Kennebec___ Docket No. __AP00-78__
County

Action __Petition for Review__
80C

J. MARDEN

Natural Resources Council of Maine, et als vs. Land Use Regulation Commission, et als

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Benjamin W. Lund, Esq.<br>Peter J. Brann, Esq.<br>184 Main Street<br>P.O. Box 3070<br>Lewiston, Maine 04243-3070 | ‒ William V. Ferdinand, Jr., Esq.(Intervenor<br>Jonathan B. Huntington, Esq. Sportsman's<br>77 Sewall Street, Suite 3000 Alliance)<br>Augusta, Maine 04330-3000<br>‒ Jeffrey Pidot, AAG<br>State House Sta 6<br>Augusta Maine  04333 |

| Date of Entry | |
|---|---|
| 11/30/00 | Petition for Review of Final Agency Action, filed. s/Brann, Esq. |
| 12/13/00 | Acceptance of Service along with attached copy of summons executed on behalf of the Defendant dated 12/8/00, filed.  s/P. Brann, Esq. |
| 12/19/00 | Notice of Appearance and Position of Sportsman's  Alliance of Maine, Presque Isle Fish and Game Club and Frederick Denico, filed. s/Huntington, Esq. |
| 12/27/00 | Certification of Administrative Record, filed.  s/John S. Williams, Director.    (record in vault) |
| 12/28/00 | Notice of briefing schedule mailed to attys of record. |
| 1/19/01 | Petitioners' Motion for Enlargement of Time, filed. s/Lund, Esq.<br>Proposed Order, filed. |
| 1/22/01 | Letter from attorney Brann indicating there is no objection to the motion for enlargement, filed. |
| 1/25/01 | ORDER, Marden, J.  (dated 1/24/01)<br>For good cause shown, the petitioners' motion for enlargement is granted. The petitioners may file their brief in the above-captioned on or before March 5, 2001.<br>Copies mailed to attys. of record. |
| 3/2/01 | Petitioners' Brief, filed. s/Lund, Esq. |
| 4/2/01 | Brief of Respondent Land Use Regulation Commission, filed. s/Pidot, AAG<br>Letter informing the court of Intervenors position to the pending petition, filed. s/Huntington, Esq. |
| 4/11/01 | Petitioner's Reply Brief, filed. s/Brann, Esq. |
| 5/31/01 | Hearing had on oral arguments on 5/31/01 with Hon. Justice Donald Marden, presiding.<br>Benjamin Lund, Esq. and Peter Brann, Esq. for the Plaintiff. Jeffrey Pidot AAG for the Defendants.<br>Oral arguments made to the court. Court to take matter under advisement. |