STATE OF MAINE
HANCOCK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2003-21
*A\W\—HAN— 6/14 500-1*

CONSERVATION LAW
FOUNDATION, INC.
AND SUSAN BRALEY

)
)
)
)
)
)

Petitioners,  )

)
v.  )
)
)
GEORGE LAPOINTE,  )
COMMISSIONER,  )
STATE OF MAINE, DEPARTMENT  )
OF MARINE RESOURCES,  )
)
)
)
Respondent  )

DECISION AND
ORDER


DONALD L. GAR...
LAW LIBR...

JUN 29 2004

This matter is before the Court on appeal pursuant to Rule 80C of the Maine
Rules of Civil Procedure from the Commissioner of the Department of Marine
Resources' **(herein, "Commissioner")** decision to grant Taunton Bay Oyster Company,
Inc.'s **(herein, "TBOC")** application for an aquaculture lease of 7.47 acres for the
purpose of cultivating eastern oysters using suspended and bottom culture techniques.
The legal basis for the Commissioner's decision was that the proposed aquaculture
activities met the requirements for the granting of an aquaculture lease set forth in 12
M.R.S.A. §6072.

## Background

On October 21, 2002, TBOC applied for an aquaculture lease of 7.47 acres for the

purpose of cultivating eastern oysters[1] in Taunton and Hog Bays in Franklin, Maine.

According to the application, the 7.47 acres were to be divided into two tracts: Tract 1

consisting of 1.19 acres located in Hog Bay; and Tract 2 consisting of 6.28 acres located

---

[1] The Eastern Oyster has never existed in Taunton Bay or the surrounding area. TBOC plans to cultivate
over 1.5 million eastern oysters in 1500 to 1800 floating trays in this area.

1

in Taunton Bay.[2] TBOC proposed to use a combination of suspended culture and bottom containment techniques on Tract 1, and bottom containment techniques on Tract 2. The lease term requested was for a period of ten years.

The Commissioner's authority to grant aquaculture leases is governed by 12 M.R.S.A. §6072, which provides that the Commissioner may grant a lease if the proposed project meets certain specified criteria. The Commissioner held a public hearing on the application on June 18, 2003.[3] Prior to that hearing, Conservation Law Foundation, Inc., and Susan Braley (herein, "Petitioners") requested, and were granted, intervenor status. The Petitioners fully participated in the process as parties.

After the hearing, the Hearing Officer prepared a "Proposed Findings of Fact, Conclusions of Law and Decision," which included findings that the proposed lease, subject to certain conditions, met the statutory criteria necessary for approval. After opportunity for the parties to comment on the proposed decision, the Commissioner issued the final decision granting the lease application on September 10, 2003. *See*

---

[2] Taunton and Hogs Bays comprise a unique ecosystem consisting at low tide of nearly all mud flats, except for two narrow channels that vary in depth from 2 to 17 feet at low tide. Taunton Bay is the northern most breeding ground for the horseshoe crab. The rocks adjacent to Tract 2 serve as haul-outs and a "pupping" ground for Taunton Bay's population of Harbor Seals.

[3] Prior to granting a lease, the Commissioner is required to hold a hearing in accordance with the adjudicatory proceeding provisions of the Maine Administrative Procedure Act (5 M.R.S.A., chapter 375, subchapter 4). 12 M.R.S.A. §6072(6).

At the public hearing, the record shows that testimony was presented by Michael Briggs and Chris Davis, representing TBOC, Jon Lewis, the Department of Marine Resources' (DMR) Aquaculture Environmental Coordinator, Scott Lindsey from the Maine Department of Inland Fisheries and Wildlife, Shawn Mahaney from the U.S. Army Corps of Engineers, Intervenors: Suzanne Schaller, Steve Perrin (representing Friends of Taunton Bay), Roger Fleming (representing Conservation Law Foundation), Susan Braley ( representing Taunton Bay Riparian Landowners), and several members of the public.

Record, Volume III, Exhibits 67 and 68. The Commissioner adopted the Hearing Officer's proposed decision in full.[4]

The Commissioner made specific findings of fact and conclusions of law in determining that the lease met each of the specified criteria set forth in 12 M.R.S.A. §6072(7-A).[5] In addressing the concerns set forth by the Petitioners, the Commissioner imposed conditions on the lease. Those conditions require:

1. TBOC to monitor ecological conditions in accordance with a monitoring plan established by the Department of Marine Resources (DMR);

2. Tract 1 contain floating gear only, that no oysters be planted on the bottom of Tract 1, and that no oysters or gear be over-wintered on Tract 1;

3. No oysters be planted on the bottom of Tract 2 until the fall of 2004;

4. The harvesting of oysters on Tract 2 be done by diver; and

5. Divers harvesting oysters on Tract 2 to conduct their dives at high tide or in a direction away from the seal ledges when seals are present.

Record, Volume III, Exhibit 67, Commissioner's Decision, p. 16.

If TBOC fails to comply with one or more of the conditions imposed or the lease activities are substantially injurious to marine organisms, the Commissioner may commence revocation procedures of the lease. *See* id., ; *see also* 12 M.R.S.A. §6072(7-B) and (11) (2003) (permitting conditions to be imposed and providing for the monitoring and revocation of leases).

---

[4] The Commissioner's Decision contains: a summary of the evidence introduced concerning the nature and impact of the proposed leases, findings of fact, conclusions of law, the decision, and conditions to be imposed on the lease.

[5] The statutory criteria in effect at the time of the Commissioner's decision can be found in 12 M.R.S.A. §6072(7-A) (1994 & Supp. 2002). The criteria have since been amended and now contain 2 additional standards. *See* 12 M.R.S.A. §6072(7-A) (2003).

The Petitioners filed an appeal pursuant to M.R.Civ.P. 80(C). The Petitioners contend that the Commissioner did not properly apply the statutory criteria as set forth in 12 M.R.S.A. §6072(7-A) (1994 & Supp 2002). Specifically, the Petitioners argue that because TBOC's lease application involved the leasing of "public trust resources," the Commissioner's findings would be held to a demanding standard of reasonableness in granting an aquaculture lease. The Petitioners also argue that the introduction of non-native oysters will unreasonably interfere with the natural processes in the area and ecologically significant flora and fauna, with the population of horseshoe crabs and related studies in the area, and with the harbor seals. The Petitioners contend the Commissioner's decision is unsupported by substantial evidence on the record and is arbitrary and capricious. The Petitioners further argue the hearing transcript is inadequate as a matter of law requiring the decision to be reversed or remanded to the Commissioner for further proceeds to correct the errors.

## Discussion

### A. Standard of Review

The scope of judicial review of an administrative agency's fact-finding is strictly limited; such a finding may be overturned only upon a showing by the challenger that it was "unsupported by substantial evidence on the whole record." Clarke v. Maine Unemployment Insurance Commission, 491 A.2d 549, 552 (Me. 1985) (citation omitted). "This standard of review of an administrative finding of fact is identical to the 'clear error' standard used by the Law Court." Id. (quoting Gulick v. Board of Environmental Protection, 452 A.2d 1202, 1207-08 (Me. 1982)). The reviewing court must examine the entire record to determine whether on the basis of all the testimony and exhibits before

4

the agency it could fairly and reasonably find the facts as it did. Clarke, 491 A.2d at 551 (*citing* In re Maine Clean Fuels, Inc., 310 A.2d 736, 741 (Me. 1973)). The Court will not substitute its judgment for the Commissioner's where there may be a reasonable difference of opinion. Clarke, 491 A.2d at 552 (*citing* Seven Islands Land Co. v. Maine Land Use Regulation Commission, 450 A.2d 475, 479 (Me. 1982)).

In an 80C appeal, the Court must determine whether the Commissioner abused its discretion, committed error of law, or made findings not supported by substantial evidence in the record. McGhie v. Town of Cutler, 2002 ME 62, ¶5, 793 A.2d 504. Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion. Bath Iron Works v. Maine Unemployment Insurance Commission, docket no. AP-01-066 (Me. Super. Ct., June 17, 2002) (*Crowley, J.*).

## B. Discussion.

### 1. Maine's Aquaculture Leasing Statute, 12 M.R.S.A. §6072.

Maine's aquaculture leasing statute provides a rather narrow list of factors that a Commissioner must consider before granting a lease in submerged lands. Before an aquaculture lease can be approved, the Commissioner must ensure:

A. That the proposed would not unreasonably interfere with ingress and egress of riparian owners;

B. That the proposed project would not unreasonably interfere with navigation;

C. That the proposed project would not unreasonably interfere with fishing or other uses of the area taking into consideration the number and density of aquaculture leases in the area;

D. That the proposed project would not unreasonably interfere with the ability of the lease site and surrounding areas to support existing ecologically significant flora and fauna;

E. That the applicant had demonstrated that there is an available source of organisms to be cultured for the lease site; and

F. That the lease would not unreasonably interfere with public use or enjoyment within 1000 feet of municipally-owned, state-owned, or federally-owned beaches and parks or municipally-owned, state-owned or federally-owned docking facilities.

12 M.R.S.A. §6072(7-A) (1994 & Supp. 2002).

## 2. *Public Trust Doctrine / Demanding Standard of Reasonableness.*

Despite the fact that a demanding standard of reasonableness is not required by the plain language of §6072(7-A), the Petitioners argue that the statute requires the Commissioner to use this demanding standard when determining whether the proposed lease meets the statutory criteria.[6] Alternatively, the Petitioners relying on the Opinion of the Justices, 437 A.2d 597 (Me. 1981), argue that the so-called "public trust doctrine" compels the Commissioner to use this demanding standard of reasonableness by implication.[7]

Maine law has long recognized that public rights inhere in submerged lands owned by the State and that the State must manage these lands for the benefit of the public. Harding v. Commissioner of Marine Resources, 510 A.2d 533 (Me., 1986) (citations omitted). Under the public trust doctrine, the United States Supreme Court has established that "the individual states have the authority to define the limits of the lands held in public trust and to recognize private rights in such lands as they see fit." Phillips

---

[6] Specifically, the Petitioners point to the language in §6072(7-A), which states that the proposed project must not *"unreasonably interfere"* with the enumerated factors listed in the statute. The Petitioners argue that the use of these words "makes it plain that more is demanded of the Commissioner." (*See* Petitioners' Reply Brief, p. 2).

[7] The Court notes that the long-standing rule in Maine is "an advisory opinion binds neither the Court nor the individual Justices who gave the opinion." Harding v. Commissioner of Marine Resources, 510 A.2d 533, 537 (Me., 1986) (*citing* Martin v. Maine Savings Bank, 147 A.2d 131, 137 (Me., 1958)).

<u>Petroleum Co. v. Mississippi</u>, 484 U.S. 469, 475; 98 L. Ed. 2d 877, 108 S. Ct. 791 (1988). Individual Justices of the Maine Supreme Judicial Court and the Legislature itself have acknowledged the existence of the "public trust doctrine" in Maine. *See* <u>Opinion of the Justices</u>, 437 A.2d 597 (Me. 1981); 12 M.R.S.A. §559(1) (1981); *see also* <u>Donnell v. United States</u>, 834 F. Supp. 19, 16 (D. Me. 1993) (acknowledging the existence of the public trust doctrine in Maine); <u>Harding</u>, 510 A.2d at 537 (recognizing the presence of the public trust doctrine in Maine law).

In the <u>Opinion of the Justices</u>, 437 A.2d 597, 607, 610 (Me. 1981), the Justices held that it is the legislation giving up public rights in submerged lands that must satisfy a particularly demanding standard of reasonableness. In the <u>Opinion</u>, the Justices were asked by the Governor to render an advisory opinion as to whether the proposed legislation would violate the State's legal responsibilities as trustee for the public and exceed the constitutional power of the Legislature under the Legislative Powers Clause of the Maine Constitution.[8] The Justices expressly stated: "in testing L.D. 1594 (legislation giving up public rights in intertidal and submerged lands) for compliance with the Legislative Powers Clause, we apply a high and demanding standard of reasonableness." <u>Opinion of the Justices</u>, 437 A.2d at 607.

The Petitioners reliance on the <u>Opinion of the Justices</u>, 437 A.2d 597 (Me. 1981) for support of its argument that the Commissioner must satisfy a particularly demanding

---

[8] *See* Me. Const. art IV, pt. 3, §1. "On achieving statehood in 1820 the people of Maine through their Constitution declared that 'all power is inherent in the people,' article I, §2, and then vested in the Legislature [:]"

> full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States.

Opinion of the Justices, 437 A.2d at 606.

standard of reasonableness in applying 12 M.R.S.A. §6072 is misplaced. It is the statute itself that must satisfy this particularly demanding standard of reasonableness, not the findings of the Commissioner in determining whether the criteria of the 12 M.R.S.A. §6072 (7-A) have been met. The Petitioners are not challenging the constitutionality of the aquaculture leasing statute, but rather they are challenging the findings of the Commissioner. The constitutionality of the aquaculture leasing statute must be presumed. *See* National Hearing Aid Centers, Inc. v. Smith, 376 A.2d 456, 460 (Me. 1977) (*citing* Union Mutual Life Ins. Co. v. Emerson, 345 A.2d 504, 507 (Me. 1975) (stating, "all acts of the legislature are presumed to be constitutional and the burden of proof is on the party who asserts an infirmity.")). Accordingly, §6072(7-A) does not require that the Commissioner's decision satisfy a particularly high standard of reasonableness.

### 3. Commissioner's Decision is Supported by Substantial Evidence.

Even if this Court were to adopt a more expansive view of the public trust doctrine by ensuring the Commissioner's decision meets "a particularly demanding standard of reasonableness" as the Petitioners argue, the Commissioner's decision to grant the aquaculture lease subject to the satisfaction of imposed conditions would meet this more demanding standard. The record shows the Commissioner addressed each of the specified criteria in 12 M.R.S.A. §6072(7-A) in great detail, as well as the concerns of the Petitioners before granting TBOC's application for an aquaculture lease. *See* Record, Volume III, Exhibit 67, Commissioner's Decision, pp. 12-14. Furthermore, the Commissioner imposed conditions on the lease to address the concerns and challenges, which are raised by the Petitioners in this appeal.

8

The Petitioners contend that the Commissioner erred in concluding that the evidence showed that the proposed lease would not interfere with fishing or other uses of the area, including the horseshoe crabs and related studies. At the hearing, testimony was provided by Dr. Davis[9] that oyster farming has existed in the Damariscotta River in Maine for over 20 years and eastern oysters and horseshoe crabs co-exist in this area. Dr. Davis testified that he has personally observed horseshoe crabs maneuver around the trays where the oysters are farmed. The DMR's Aquaculture Environmental Coordinator (**AEC**) testified that shellfish aquaculture and horseshoe crabs co-exist in other parts of Maine. A research paper by the DMR (**Oyster Paper**) discussing the introduction of oysters into the proposed lease site was also introduced into evidence during the hearing. The Oyster Paper supports the AEC's findings that horseshoe crabs and oysters co-exist in other parts of Maine and concluded that the horseshoe crab population would not be adversely affected by the introduction of eastern oysters into Taunton Bay.

Concerns were voiced that the proposed lease would interfere with the horseshoe crab population study conducting spawning counts and the radio-telemetry study tracking the movement of horseshoe crabs, which concludes in the spring 2004, if oysters were planted on the bottom of Tract 1. To ensure that the lease did not unreasonably interfere with these two ongoing studies of horseshoe crabs, the Commissioner imposed a condition requiring that no oysters are to be planted on the bottom of Tract 1, and that no oysters shall be over-wintered or planted on the bottom of tract 2 until the summer of 2004. Accordingly, the Court finds that the Commissioner did not error in determining

---

[9] Dr. Davis represented the applicant and provided testimony regarding the ecological impact of growing Eastern Oysters in Taunton and Hogs Bays. Dr. Davis testified that he has a PH.D. in shellfish biology and that he has been growing oysters for 17 years.

that §6072(7-A)(C) was satisfied and that the proposed lease will not unreasonably interfere with the horseshoe crab population and related studies.

The Petitioners also contend that the Commissioner erred in finding that the proposed lease would not unreasonably interfere with the Taunton and Hogs Bays' ability to support ecologically significant flora and fauna, as well as with the pupping area for harbor seals adjacent to Tract 2. The Commissioner relied on the evidence presented at the hearing by Dr. Davis, who testified that eastern oysters are native to Maine waters, although not found in Taunton Bay; and oyster farming has existed in the Damariscotta River for 20 years without having a negative impact on the flora and fauna, nor the seal pups, who hang out around the oyster trays. The Commissioner further relied on the DMR's AEC's testimony that the lease site is rich in phytoplankton and that the oysters would not rob the bay of food ensuring the availability of phytoplankton to existing flora and fauna; that the proposed activities are not expected to have any more of an impact on the harbor seals then other activities that currently occur in the area; and that with good behavior the lease activities can occur around the seals without impacting them.

The Commissioner adequately addressed the concerns set forth by the Petitioners by imposing conditions on TBOC's proposed aquaculture lease. To ensure that the lease would not negatively impact the ecology of the bay, the Commissioner imposed a condition requiring TBOC to monitor the ecological conditions and to report its findings to the DMR on an annual basis in accordance with a monitoring program established by the DMR. To ensure that the boating activities associated with the lease would not disturb the seals, the Commissioner imposed a condition requiring the divers to either conduct their dives at high-tide (when the seals are not present) or to conduct their dives

in the direction away from the seals, so as not to surface when the seals are present. Accordingly, the Court finds that the Commissioner did not error in finding §6072(7-A)(D) was satisfied and that the proposed lease will not unreasonably interfere with the Taunton and Hogs Bays' ability to support ecologically significant flora and fauna, as well as with the pupping area for harbor seals.

Furthermore, the aquaculture leasing statute provides an added protection by permitting the Commissioner to revoke the lease if the applicant fails to comply with the imposed conditions or if the leasing activities harm marine life in the area. *See* 12 M.R.S.A. §6072(7-B) and (11) (stating that if applicant fails to comply with one or more of the conditions imposed or the lease activities are discovered to be substantially injurious to marine organisms, the Commissioner may commence revocation procedures of the lease).

## Conclusion

The Court concludes that the findings of the Commissioner are supported by substantial evidence in the record.[10] The Commissioner properly considered each of the

---

[10] The Petitioners argue that the administrative record is incomplete and, as such, prejudiced their opportunity to make their factual and legal contentions known to the Commissioner and to the Court. *See* Petitioners' Brief, pp. 19-21. From this extensive record, the Petitioners point to page 181 of the transcript, at which a portion of the testimony provided at the hearing, was apparently omitted. A review of the transcript also shows that the word, "inaudible" appears a total of eight times.

The remedy available to the Court when the record is insufficient for judicial review is a remand to the agency for further findings or conclusions. 5 M.R.S.A. § 11007(4)(B). The statute leaves it to the discretion of the Court to determine whether additional evidence is necessary to decide the petition for review. 5 M.R.S.A. §11006(1)(B).

The Court finds that the administrative record is sufficient for review and that additional evidence is not necessary for deciding this petition. The administrative record in this case consists of 68 Exhibits and a transcript of the public hearing, which is193 pages in length. The exhibits include written versions of testimony provided by the Petitioners during the hearing.

criteria set forth by 12 M.R.S.A. §6072(7-A). Accordingly, the decision was neither arbitrary nor an abuse of discretion.

Therefore the entry is:

Appeal **DENIED**. The Commissioner's decision to grant the aquaculture lease is **AFFIRMED**.

DATED: June 11, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

JUN 1 4 2004

SUPERIOR COURT
HANCOCK COUNTY

---

Furthermore, the Petitioners failed to comply with M.R.Civ.P. 80C(f), which require the Petitioners to serve notice on the Commissioner within 10 days after the record is filed, requesting modifications or corrections to the record.