STATE OF MAINE
KENNEBEC COUNTY, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-21-03

SARAH CATHERINE A. TATLOCK,

Petitioner

v.

UNEMPLOYMENT INSURANCE COMMISSION

Respondent

**ORDER ON PETITIONER'S
M. R. CIV. P. 80C APPEAL**

Before the Court is Petitioner Sarah Catherine A. Tatlock's Rule 80C Petition for Review of Final Agency Action. Pursuant to Rule 80C and Maine Administrative Procedure Act, 5 M.R.S. §§ 11001-08, Petitioner challenges the decision of Respondent Unemployment Insurance Commission ("Commission") that affirmed an Administrative Hearing Officer's decision that Petitioner is ineligible for unemployment benefits because she was discharged from her employment for misconduct. After review of the record, this Court affirms the Commission's decision.

**Background**

Petitioner was employed with the Department of Health and Human Services ("DHHS" or "Department") as a policy writer from December 10, 2018 to April 22, 2020. Certified Record ("CR") at 307-8. Petitioner had arrived late to work several times in January 2020 and had discussed the issue with her supervisor. CR at 94, 309-10. On February 12, 2020, Petitioner and her supervisor met to discuss her ongoing tardiness. CR at 94, 296, 499-500.

1

On February 13, 2020, Petitioner was fifteen minutes late when she pulled into the parking lot at her place of employment. CR at 94, 296. Petitioner had a workplace safety plan in place due to a protection from abuse order she obtained, and the safety plan included a designated parking spot for Petitioner that was close to the entrance of the building in which she worked. CR at 94, 309, 407, 411-4. On the morning of February 13, another car was parked in her designated spot, so she parked beside it and entered the workplace. CR at 94, 309. Five minutes later, she sent an email to her superior stating that she had gone off the road three times on the way to work, discovered another car in her designated space, and fallen in the parking lot. CR at 95, 503. She received an email asking her to complete a report of the fall, in which she alleged several resultant injuries, and provided the report to her employer. CR at 95, 183. Her employer then submitted the form to the Office of Worker's Compensation. CR at 95, 508.

The Office of Worker's Compensation requested and reviewed video footage of the parking lot on the morning of February 13, 2020, sent to it by the human resources generalist, who had obtained the footage from a building control technician. CR at 95, 270-1. The footage did not show Petitioner falling in the parking lot. CR at 95, 271. The human resources generalist notified Petitioner by letter that the employer was conducting an investigation into her claim and report of having fallen and that if the investigation found she had not fallen, her employment could be terminated. CR at 95, 271, 511. Though Petitioner had consistently claimed otherwise, the investigation found that Petitioner had not fallen in the parking lot. CR at 95, 273, 514-25. On April 13, 2020 Petitioner received a letter from her employer with the results of the investigation, which recommended she be terminated from employment. CR at 95,

514. A *Loudermill* hearing was held on April 16, 2020.[1] CR at 95, 285-7, 526. On April 22, 2020, Petitioner's employment was terminated. CR at 94, 297-8, 526.

Petitioner applied for unemployment benefits, and the Bureau of Unemployment Compensation denied her application, finding that she had been terminated for misconduct. CR at 110-2; *see* 26 M.R.S. § 1193(2). Petitioner appealed that decision to the Department of Labor Division of Administrative Hearings, which affirmed after a telephonic hearing. CR at 94. Petitioner then appealed to the Unemployment Insurance Commission, which again affirmed. CR 16-7, 22-6. Petitioner requested reconsideration by the Commission, which denied the request and held that it lacked jurisdiction because the request had not been timely. CR at 5-7.

**Standard of Review**

When the Superior Court reviews a decision of the Maine Unemployment Insurance Commission, its review "is limited to determining whether the Commission correctly applied the law and whether its fact findings are supported by competent evidence." *McPherson Timberlands v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. This standard of review "is identical to the 'clear error' standard used by the Law Court." *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1207-08 (Me. 1982). The Court must not disturb the decision of the Commission "unless the record before the Commission compels a contrary result." *Id.* The Court must examine the entire record to determine whether the Commission could fairly and reasonably find the facts as it did. *See* 5 M.R.S.A. § 11007(4)(C)(5); *Clarke v. Maine Unemployment Ins. Comm'n*, 491 A.2d 549, 552 (Me. 1985).

---

[1] Petitioner claims that her *Loudermill* hearing did not meet the procedural requirements. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985). The Court does not address this argument as it is neither colorable nor material to this appeal.

3

The burden is on the petitioner to prove that "no competent evidence supports the [agency] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995) (citation omitted); *see also Seven Islands Land Co. v. Maine Land Use Regulatory Comm'n*, 450 A.2d 475, 479 (Me. 1982). Additionally, the Court may not substitute its judgment for that of the agency simply because the evidence could give rise to more than one result; or because the reviewing Court might have interpreted the evidence or judged the credibility of witnesses differently than the agency decision-maker. *See Dodd v. Secretary of State*, 526 A.2d 583, 584 (Me. 1987); *Gulick*, 452 A.2d at 1209.

**Discussion**

An unemployed individual is disqualified from receiving unemployment benefits when the individual was discharged from employment for misconduct. 26 M.R.S. § 1193(2). Misconduct is defined as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." 26 M.R.S. § 1043(23). The statute provides examples of acts or omissions that are presumed to be misconduct including: "Unreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment" and "[p]roviding false information on material issues relating to the employee's eligibility to do the work or false information or dishonesty that may substantially jeopardize a material interest of the employer." § 1043(23)(A)(3), (5).

Here, the Unemployment Insurance Commission's decision adopted the findings and reasons for decision of the ruling below, holding that Petitioner "was discharged from employment for falsely reporting that she fell and was injured walking into the employer's

4

workplace, and for numerous subsequent misrepresentations," that this behavior "constituted an ongoing and culpable breach of her duties or obligations to the employer," and that it qualified as misconduct under § 1043(23)(A)(3), (5). CR at 97. The Commission found Petitioner was disqualified from receiving unemployment benefits because her actions resulting in termination constituted misconduct.

*Timeliness of the Request for Reconsideration*

Petitioner argues that her request for reconsideration was timely and should not have been denied. The parties agree that the decision of the Commission was issued November 17th, 2020 and that the Petitioner's request for reconsideration was received December 4, 2020. The statute that governs claims for unemployment benefits, 26 M.R.S. § 1194, does not address requests for reconsideration but refers to the administrative rules. The rules allow "an interested party [to] request the Commission to reconsider its decision in a case, only if such request for reconsideration is filed in writing with the commission within 10 days of receipt of the original commission decision." 12-172 C.M.R. ch. 5, § 4(A).

The Commission reasoned in the present case that "the last day on which a valid request for reconsideration could have been filed was November 27, 2020...." CR at 7. This determination is incorrect. The ten days run from receipt of the decision, not issuance of the decision. The record in the Commission's decision denying reconsideration does not reflect the date the Petitioner received the original decision. It is not unheard of for mail to take a week to arrive at its destination, especially during the time period at issue, with significant pandemic-related mail interruptions. Therefore, the Court finds the record does not contain enough evidence to show that Petitioner received the mailing before the 24th of November, which was

5

ten days before it was filed with the Commission. Despite this error, the Commission's decision denying jurisdiction acknowledges that if the request for reconsideration were timely, the Commission still would have denied reconsideration. The Commission is not required to accept a reconsideration request. Therefore, the Court finds that this error did not affect the Commission's decision on reconsideration.

*Unemployment Insurance Commission's Original Decision*

Petitioner argues that the Commission's original decision should be reversed because it is arbitrary, capricious, and an abuse of discretion. Specifically, she claims that the Bureau of Unemployment Compensation's initial decision denying unemployment benefits, CR at 110, was unsubstantiated because it lacked video evidence from the employer such that the employer could not have carried its burden of proof. The Court finds this argument unpersuasive. Whether the employer provided video evidence for that decision is irrelevant to whether the Commission's decision was supported by substantial evidence. The Commission's decision was not based on the same record the initial decision was. Moreover, the videos do appear in the record that was before the Commission, before the Division of Administrative Hearings, and is presently before the Court.

Petitioner next argues that this Court should reverse the final agency action because it was affected by an error of law. She claims that the video evidence submitted by the employer is unreliable because Petitioner showed that it "(1) had been tampered with, (2) did not contain the industry standard date timestamp ... ; (3) showed that the cameras at the main entrance ... do not capture the entire area; and (4) was not provided by [the employer] until subpoenaed by Petitioner on appeal." Petitioner's Brief at 6. The Commission adopted the findings of fact and

reasons for decision set forth by the Administrative Hearing Officer, who addressed the reliability of the video footage in its decision. The Officer explained that one of the video recordings, titled "41AA_NW Exterior_02_13_20_0815," contains a timestamp and shows the Petitioner getting out of her car and entering the building with

> no indication throughout the claimant's walk from her car and into the building that she slipped, fell and lay on the ground for a few minutes. The entire recording presents staggered clips instead of continuous fluid motion. However, the staggered clips are uniform throughout the recording, suggesting that they are a regular function of the recording and not deletions designed to conceal an event. The gaps between the staggered clips are also relatively brief. There is not enough time between clips or distance covered by the claimant between clips, for an unintentional or intentional omission that could wholly exclude all evidence of the claimant slipping, falling, and lying on the ground for a few minutes.

> ...

> [I]t is found that the authenticity and reliability of the video recordings submitted by the employer are sufficient to establish that the claimant did not slip and fall as she walked to her workplace building on February 13, 2020.

CR at 96. The Court is satisfied that this finding regarding the reliability of the video evidence is supported by record evidence. It therefore finds that the Commission made no error in finding the video evidence reliable.

Petitioner then argues that the Commission's decision is not supported by substantial evidence in the record. Specifically, she argues that the existence of the staggered clips on some of the video evidence but all and the "lack of date and time stamp" show that "at least one video

7

presented as evidence have [sic] been altered by the employer." Petitioner's Brief at 7. The Court disagrees. The record supports the Commission's finding that the footage was not tampered with and that differences in the videos were merely the result of camera functions.

In her Response to Respondent's Brief, Petitioner makes an additional argument that the Commission's decision is flawed because she was not given the opportunity for a fair hearing. She claims that the employer "was given the entire three-hour period to present its case" in the hearing before the Administrative Hearing Officer. Petitioner's Response to Respondent's Brief at 1. The record does not support Petitioner's argument. The following colloquy took place after the employer presented its case and Ms. Tatlock had testified and admitted exhibits on her own behalf:

> *Hearing Examiner*: Now, I have another hearing coming up at one. There are – there's ten minutes before that time. I'm not sure Ms. Tatlock, what additional testimony you wanted to provide, and Ms. Wright, what questions you might have for Ms. Tatlock. My expectation is that we're not going to complete this within the next ten minutes. … Well, let me ask it this way, Ms. Tatlock, did you have additional testimony that you wanted to present?
>
> *Ms. Tatlock*: No.

CR at 352.

After the opposing attorney cross-examined Ms. Tatlock, the Hearing Officer asked: "Anything further you would like to present at this time Ms. Tatlock? Any further testimony?" to which Ms. Tatlock responded: "No, sir. Thank you." CR at 358. Ms. Tatlock expressed clearly that she had presented all evidence that she intended to and did not need more time. Therefore, this Court finds that the Commission's conclusion that Petitioner "did, in fact, have an adequate

8

opportunity to present her case before the Division of Administrative Hearings…" was supported by substantial record evidence. CR at 17.

Petitioner next claims that a pattern of the Commission's accepting late filings from the DHHS "circumvent[ed] Claimant's due process rights and protections afforded under Maine law." Petitioner's Response to Respondent's Brief at 1. Petitioner raised a portion of this argument in the telephonic hearing. She objected to the employer's response to her subpoena, alleging the documents were not sent in a timely manner. CR at 216. She denied having had adequate time to review the documents before hearing, but she then waived that claim by electing to proceed with the hearing as scheduled. CR at 17, 217. Thus, this Court finds that Petitioner's rights were not violated by a late subpoena response.

In Petitioner's Response to Respondent's Brief, she lists several other instances of the DHHS's missing deadlines without repercussion and argues that this pattern establishes an "inappropriate, symbiotic relationship between the Maine Department of Labor (DOL) and DHHS whereby DOL allows DHHS to not respond to requests for information relating to claims under the Commission's purview." at 1-2. This Court finds that these allegations, if true, are not sufficient to support Petitioner's allegation of bias or unlawful procedure.

**Conclusion**

The Court AFFIRMS the decision of the Commission. The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

9

Date:   February 1, 2022

Hon. M. Michaela Murphy
Justice, Maine Superior Court

10