BETHANIA ASSOCIATION, Plaintiff-Appellant, v. SALLY A. JACKSON, Director of the State of Illinois Department of Employment Security, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—92—3632

Opinion filed May 10, 1994.

Timothy J. Klein, of Bloomingdale, for appellant.

Roland W. Burris, Attorney General, of Chicago (John A. Morrissey, Assistant Attorney General, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff is a not-for-profit association of 14 Lutheran churches which owns and operates Bethania Cemetery. For over three years, defendant Elizabeth Chicola worked as a clerk-typist/bookkeeper for plaintiff at Bethania Cemetery until she was discharged on January 13, 1989. Chicola applied for unemployment benefits after her discharge, but plaintiff opposed her application, contending that it was exempt from employer contributions.

Plaintiff incorporated as "Bethania Association" in 1915 and according to its amended bylaws, its purpose is "to acquire or receive directly or indirectly by purchase, gift, grant, donation, devise or bequest, real and personal property for use as a cemetery." Plaintiff's constitution states that membership in the association is limited to Lutheran congregations. Its management is vested in a board of directors composed of a president, vice-president, secretary, treasurer and a delegate-director representing each member congregation.

Randall Liese, cemetery superintendent, testified that the

cemetery has a business license and derives its income from sales of burial plots, flowers, and monuments and from charges for opening and closing graves. The association does not require that persons buried in the cemetery have any particular religious affiliation.

On January 19, 1989, a claims adjudicator determined that the wages Chicola earned while in plaintiff's employ were excluded from her base period[1] pursuant to section 211.3 of the Illinois Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1991, ch. 48, par. 321.3). Chicola appealed that determination and, after a hearing, the referee modified the claims adjudicator's wage finding to include in Chicola's base period the wages she earned while employed by plaintiff.

Plaintiff appealed the referee's decision to the Illinois Department of Employment Security's Board of Review (the Board) arguing that it was exempt from employer contributions under section 211.3(A)(1) of the Act, which excludes from the term "employment" services performed "[i]n the employ of a[n] *** association of churches." (Ill. Rev. Stat. 1991, ch. 48, par. 321.3(A)(1).) Alternatively, plaintiff argued that it was exempt under section 211.3(A)(2) of the Act, which excludes services performed for "an organization *** which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a[n] *** association of churches." (Ill. Rev. Stat. 1991, ch. 48, par. 321.3(A)(2).) The Board remanded the case for another hearing due to the inadequacy of the transcript, and at the second hearing, the referee reiterated his determination, reasoning that even though Bethania Cemetery is "operated, supervised or controlled by an association of churches, it is not operated primarily for religious purposes."

On January 31, 1991, the Board affirmed the referee's decision. Plaintiff then filed a complaint for administrative review in the circuit court (Ill. Rev. Stat. 1991, ch. 48, par. 520), contending that the Board's decision was erroneous for one or more of the following reasons: it was contrary to the evidence presented; plaintiff was exempt under the Act; the Board abused its discretion in failing to render a decision consistent with previous decisions in similar fact situations; and the decision was arbitrary and capricious.

On October 4, 1991, the trial judge remanded the case to the

---

[1]The base period is used in calculating the amount of benefits claimants receive. The base period for each benefit year beginning on or after November 1, 1981, is the first four of the last five completed calendar quarters immediately preceding the benefit year. The benefit year begins with the effective date of an individual's valid claim. Ill. Ann. Stat., ch. 48, pars. 347, 352, Historical Notes (Smith-Hurd 1986 & Supp. 1992).

Board for a supplemental decision as to whether plaintiff was exempt under section 211.3(A)(1) of the Act, and the Board issued its "Corrected Supplemental Decision" on November 14, 1991, affirming its prior decision. The Board relied on *St. Martin Evangelical Lutheran Church & Northwestern Lutheran Academy v. South Dakota* (1981), 451 U.S. 772, 68 L. Ed. 2d 612, 101 S. Ct. 2142, in reaching its conclusion that since plaintiff had a "separate legal identity" from the association of churches which formed it, it was not exempt.

Plaintiff argued in the trial court that the issue of separate incorporation was "irrelevant" to the court's determination of whether it was exempt as an association of churches and that the Board's focus on whether it was operated primarily for religious purposes was incorrect. In support of its contention that it was exempt based on its status as an association of churches, plaintiff pointed out that the "Bethania Cemetery Association Constitution and Bylaws" stated that membership in the association "shall be composed of only Lutheran Congregations."

On September 17, 1992, the trial judge ruled that the Board's findings were not against the manifest weight of the evidence or contrary to the law. She found "no support in the record that the Bethania Association and the association of churches that they have come together to form it [*sic*] are one and the same"; thus, under *St. Martin*, plaintiff could be found exempt only under section 211.3(A)(2). The trial judge found that plaintiff did not qualify for that exemption because it was not operated primarily for religious purposes. Plaintiff appeals from that ruling.

When reviewing the decision of an administrative agency, our function is not to reweigh the evidence; the findings and conclusions of the agency regarding questions of fact are considered *prima facie* correct and will not be disturbed unless they are against the manifest weight of the evidence. (*Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849, 851; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434, 437.) However, reviewing courts are not required to give such deference to an administrative agency's conclusions of law, and a decision based upon an erroneous construction of a statute cannot stand. *Pesce*, 161 Ill. App. 3d at 881, 515 N.E.2d at 851.

A fundamental rule of statutory construction is to ascertain and effectuate legislative intent. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758, 764.) Legislative intent should be discerned from the statutory language, and, where the language is certain and unambiguous, the court's sole function is to enforce the statute as enacted without reading into it exceptions, conditions or

limitations which conflict with clearly expressed legislative intent. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, 389 N.E.2d 151, 153; *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1987), 163 Ill. App. 3d 253, 254-55, 516 N.E.2d 967, 969, *aff'd* (1989), 126 Ill. 2d 326, 533 N.E.2d 1072.) Another fundamental rule of statutory construction disfavors finding surplusage and requires courts to give each provision some reasonable meaning, if possible. *E.g.*, *Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, 230, 239 N.E.2d 831, 835, *cert. denied* (1969), 393 U.S. 1062, 21 L. Ed. 2d 706, 89 S. Ct. 716.

Unemployment insurance is a joint State and Federal program whereby the Federal government imposes an excise tax on certain classes of employers and gives them credit against the tax for their contributions to federally approved State-run unemployment insurance plans. (*Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 777, 439 N.E.2d 975, 977.) The Federal government sets forth minimum standards of coverage which the States must comply with in order for State employers to qualify for the Federal tax credit. (See *Community Renewal*, 108 Ill. App. 3d at 777, 439 N.E.2d at 977.) The language of section 211.3 of the Illinois Act mirrors provisions in the Federal Unemployment Tax Act (FUTA). (Ill. Rev. Stat. 1991, ch. 48, pars. 321.3(A)(1), (A)(2); 26 U.S.C. §§ 3309(b)(1)(A), (b)(1)(B) (1976).) Since the Federal and State statutes comprise a single scheme, the construction of the State law should be consistent with that of its Federal counterpart. *Lutheran Church-Missouri Synod v. Bowling* (1980), 89 Ill. App. 3d 100, 101, 411 N.E.2d 526, 527; see also Ill. Rev. Stat. 1991, ch. 48, par. 370.

The express legislative purpose in enacting the Act was to "shield unfortunate persons from economic burdens caused by involuntary unemployment." (*St. Augustine's Center for American Indians, Inc. v. Department of Labor* (1983), 114 Ill. App. 3d 621, 624, 449 N.E.2d 246, 248; see Ill. Rev. Stat. 1991, ch. 48, par. 300 (compulsory unemployment insurance is necessary to alleviate the social problems associated with involuntary unemployment).) The Act is remedial in nature and its provisions must be liberally construed. (*St. Augustine's*, 114 Ill. App. 3d at 624, 449 N.E.2d at 248.) It follows, then, that the burden of proving a tax exemption is upon the party claiming it (see *Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 104, 390 N.E.2d 333, 335), and exemption provisions are strictly construed with uncertainties resolved in favor of inclusion. *Ducks Unlimited, Inc. v. Grabiec* (1971), 133 Ill. App. 2d 134, 140, 272 N.E.2d 657, 662; see also *American Medical Association v. Board of Review* (1946), 392 Ill. 614, 621, 65 N.E.2d 350, 353 (holding that Act's exemption provisions for exclusively charitable, scientific and

educational organizations did not apply to a medical association which devoted a substantial portion of its resources to protecting the economic interests of its members).

■ The Act broadly defines an "employing unit" as "any individual or type of organization *** and any *** association *** or corporation *** which has *** had in its employ one or more individuals performing services for it within this State." (Ill. Rev. Stat. 1991, ch. 48, par. 314.) "Employment" is also expansively defined as "any service *** performed by an individual for an employing unit *** without regard to whether such services are executive, managerial or manual in nature." (Ill. Rev. Stat. 1991, ch. 48, par. 316.) The Act goes on to provide exemptions from the definition of employment including the provision at issue in the present case:

"[T]he term 'employment' shall not include services performed
A. In the employ of (1) a church or convention or association of churches, or (2) an organization or school which is not an institution of higher education, which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention *** of churches." (Ill. Rev. Stat. 1991, ch. 48, par. 321.3.)

Neither the Act nor its Federal counterpart defines the term "association of churches."

■ Plaintiff argues on appeal that it is exempt from employer contributions under the first prong of the exemption provision because it is an association of churches and its incorporation is irrelevant to that status. Plaintiff's analysis rests on the premise that the association is the employer and the cemetery is merely a "geographic place" which employs no one.

Plaintiff maintains that the trial court erroneously relied on *St. Martin*. In *St. Martin*, the Supreme Court held that certain religious schools' employees were exempt from coverage under the FUTA and its South Dakota counterpart. (*St. Martin*, 451 U.S. at 788, 68 L. Ed. 2d at 624, 101 S. Ct. at 2151.) (The South Dakota exemption provision, like the FUTA, is identical to the Illinois provision.) The Court reasoned that since the schools were not separately incorporated from the churches, their employees were employed by a church, or a convention or an association of churches. *St. Martin*, 451 U.S. at 785, 68 L. Ed. 2d at 621-22, 101 S. Ct. at 2148-49.

The Court found that Congress intended a distinction between churches and associations of churches, and separately incorporated organizations. Separately incorporated organizations are subject to the dual requirements of the second prong of the exemption provision while churches and associations of churches are exempt without

qualification under the first prong of the provision. (*St. Martin*, 451 U.S. at 782, 68 L. Ed. 2d at 620, 101 S. Ct. at 2148.) The Court emphasized the significance of this distinction, stating that its importance was "heightened by the great diversity in church structure and organization among religious groups in this country." (*St. Martin*, 451 U.S. at 782 n.12, 68 L. Ed. 2d at 620 n.12, 101 S. Ct. at 2148 n.12.) Because of this diversity, it was impossible for Congress to "lay down a single rule to govern all church-related organizations." (*St. Martin*, 451 U.S. at 782 n.12, 68 L. Ed. 2d at 620 n.12, 101 S. Ct. at 2148 n.12.) The Court limited its holding to church-related schools that "have no legal identity separate from a church," and stated that in order for a separately incorporated church school or other organization to qualify for an exemption, it must be both operated primarily for religious purposes and supervised, controlled, operated or principally supported by a church, convention of churches or an association of churches. *St. Martin*, 451 U.S. at 782 n.12, 68 L. Ed. 2d at 620 n.12, 101 S. Ct. at 2148 n.12.

Contrary to plaintiff's assertion, the *St. Martin* case makes clear that incorporation is a highly significant fact in determining which prong of the exemption provision is applicable to our analysis of whether plaintiff is exempt. (See *St. Augustine's*, 114 Ill. App. 3d 621, 449 N.E.2d 246 (applying section 211.3(A)(2) to a separately incorporated religious organization); *Community Renewal*, 108 Ill. App. 3d 773, 439 N.E.2d 975 (same).) Our analysis does not require a statutory definition of "association of churches" because we agree with the trial court's finding that the cemetery, though nominally an association, is a distinct legal entity from the association which formed it.[2] Cf. *De La Salle Institute v. United States* (N.D. Cal. 1961), 195 F. Supp. 891, 893 (holding that the plaintiff was not exempt from income taxes as a church or association of churches when it incorporated as an "educational and benevolent institution" which owned and operated a novitiate, religious schools, a home for Brothers, and a winery).

Moreover, defendant correctly asserts that plaintiff's interpreta-

---

[2]We remind plaintiff that incorporating by definition results in the creation of a separate legal entity. See *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 204, 427 N.E.2d 94, 101 ("a corporation is separate and distinct from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated"); *Earp v. Schmitz* (1948), 334 Ill. App. 382, 388, 79 N.E.2d 637, 639 ("a corporation is a distinct entity; *** generally one who has created a corporate entity will not be permitted to disregard it to gain an advantage, which under it would be lost").

tion of the statute renders the second prong of the exemption provision superfluous. Under plaintiff's analysis, since any association of churches could incorporate and remain exempt, the second prong of the provision would be mere surplusage. Furthermore, as defendants point out, an association of churches could incorporate for any number of secular purposes and yet remain exempt from employer contributions to the unemployment fund. Such a strained construction of the statute is at odds with its express purpose to provide broad coverage for the involuntarily unemployed. (See *Harvey Firemen's Association*, 75 Ill. 2d at 363, 389 N.E.2d at 153.) We accordingly hold that plaintiff is not exempt from employer contributions under section 211.3(A)(1) of the Act.

If plaintiff is exempt, its exemption must be based upon section 211.3(A)(2) of the Act. (Ill. Rev. Stat. 1991, ch. 48, par. 321.3(A)(2).) However, while plaintiff argued in the alternative for an exemption pursuant to section 211.3(A)(2) in the trial court, on appeal it relies solely on section 211.2(A)(1), thereby waiving any claim of exemption under the second prong of the provision. 134 Ill. 2d R. 341(e)(7).

Waiver notwithstanding, plaintiff could not qualify for an exemption under section 211.3(A)(2) in light of our decision in *Concordia Association v. Ward* (1988), 177 Ill. App. 3d 438, 532 N.E.2d 411. In *Concordia*, an association of six Lutheran churches formed a corporation to "operate and maintain a cemetery." Its income derived from the sales of lots, caskets, flowers and other cemetery merchandise. Only members of the Lutheran faith or their family members could be buried at Concordia. (*Concordia*, 177 Ill. App. 3d at 439-40, 532 N.E.2d at 412.) As in the present case, the cemetery in *Concordia* was indisputably operated by an association of churches. Thus, the pivotal issue was whether the cemetery was operated for purposes which could be characterized as primarily religious. We concluded in *Concordia* that the cemetery was not run primarily for religious purposes, observing that burial of the dead is a matter of public concern and that the functions Concordia performed were the same as those of secular cemeteries. We consequently found that Concordia's primary purpose was to furnish a burial place for the dead and that any historical or ongoing religious purposes were secondary to its secular purpose. *Concordia*, 117 Ill. App. 3d at 442, 532 N.E.2d at 413-14.

Likewise, plaintiff performs primarily secular functions in burying the dead and, though it provides a chapel for religious services, it does not require that those buried in its cemetery adhere to any particular faith. Therefore, as in *Concordia*, plaintiff is not exempt from employer contributions under section 211.3(A)(2) of the Act. Ill. Rev. Stat. 1991, ch. 48, par. 321.3(A)(2).

In conclusion, we hold that the trial court did not err in affirming the Board's decision, which was neither incorrect regarding the law nor against the manifest weight of the evidence.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.